40 A.3d 1201

COMMONWEALTH of Pennsylvania, Appellant

v.

William Howard WILGUS, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 20, 2010.

Decided March 26, 2012.

33

Jennifer Wisniewski Gettle, Dauphin County District Attorney's Office, Edward Michael Marsico Jr., Harrisburg, Christopher Joseph Schmidt, for Commonwealth of Pennsylvania.

Michael F.J. Piecuch, for Appellant Amicus Curiae, Pennsylvania District Attorneys Association.

Dana Maria Wucinski, Kenneth A. Rapp, Harrisburg, Dauphin County Public Defender's Office, for William Howard Wilgus.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

The Commonwealth appeals from the Superior Court order affirming the trial court's dismissal of charges against appellee for violation of Megan's Law requirements. For the following reasons, we reverse.

Appellee was convicted in 1998 of aggravated indecent assault; he received a sentence of five years to life imprisonment, was found to be a sexually violent predator, and was ordered to comply with Megan's Law registration requirements. The Superior Court vacated this sentence and remanded for resentencing without application of Megan's Law registration requirements; appellee was resentenced to five to 10 years imprisonment. He became subject to lifetime registration requirements because he was incarcerated when revisions to Megan's Law became effective in 2007. *See* 42 Pa.C.S. § 9795.1(b)(4) (requiring registration for individuals currently residing in Commonwealth who have been convicted of certain offenses).

Upon his release from prison on April 23, 2007, a friend drove him to a homeless shelter in Harrisburg. Two days later, he left when he was told Megan's Law registrants were not allowed at the shelter. He went to 1708 Market Street in Harrisburg, which he had reported to prison authorities as his intended address upon release. Megan's Law requires offenders to register an intended address with prison authorities before being released. *Id.*, § 9795.2(a)(4)(i). There were no apartments available at that address, and he began sleeping at various places on the street.

Appellee arranged to have his mail, including Social Security checks, delivered to a soup kitchen in Harrisburg. He obtained a locker there and visited daily to drop off and retrieve his belongings. He never informed authorities he was not living at the previously reported address, and when a

detective attempted to verify appellee's compliance with registration requirements, he found appellee never resided there.

On May 20, 2007, appellee was located in the area of Second and Market Streets in Harrisburg and was arrested for failing to register; Megan's Law requires sex offenders to notify Pennsylvania State Police of their residence and any change of residence. *Id.*, § 9795.2. He was convicted under 18 Pa.C.S. § 4915(a)(1) (failure to register with Pennsylvania State Police as required) and 18 Pa.C.S. § 4915(a)(2) (failure to verify address or be photographed as required), at a non-jury trial and sentenced accordingly.

Appellee filed post-sentence motions arguing the evidence was insufficient to support his conviction because he had no residence to register; in the alternative, he argued the registration requirements were unconstitutionally vague as applied to homeless defendants. The trial court found the evidence insufficient to support appellee's convictions, granted his motion, and dismissed the charges against him. The Commonwealth appealed.

The Superior Court affirmed, agreeing with the trial court's reasoning that appellee had no "residence" as defined by Megan's Law; accordingly, he could not be held in violation of requirements to register his residence. *Commonwealth v. Wilgus*, 975 A.2d 1183, 1189 (Pa.Super.2009). The Superior Court held appellee's conviction should be set aside, concluding, "the Legislature could have drafted the Megan's Law registration requirement to require a homeless and transient person to register, but it did not. . . ." *Id.*, at 1184.

As the issue had not been addressed in Pennsylvania, the Superior Court relied on *Twine v. State*, 395 Md. 539, 910 A.2d 1132 (2006), in which the Court of Appeals of Maryland found Twine's eviction and subsequent homelessness did not constitute a change in residence for purposes of registration.[1] As in the present case, the appellant in *Twine* argued he could not

1. The Maryland statute in effect at the time required written notice of change of residence or address; the section under which Twine was convicted has since been amended to include requirements for homeless registrants. *See* Md.Code, Crim. Proc. § 11–705(d).

register a residence because he did not have one. *Id.*, at 1136. The Maryland Court held Twine did not change residences because he did not acquire a new residence within the meaning of the statute. The Court determined the legislature intended "residence" and "address," used interchangeably in the statute, to indicate a fixed location where a person lives or intends to return. *Id.*, at 1138. The Court relied on *State v. Pickett*, 95 Wash.App. 475, 975 P.2d 584 (1999)[2] and *State v. Iverson*, 664 N.W.2d 346 (Minn.2003); in those cases, the courts found sex offender registration statutes did not impose an obligation on homeless registrants to report a change of residence. *Twine*, at 1138–39.

Similarly, the Superior Court here sought to determine the meaning of the word "residence" and whether that meaning applies to a homeless person. The statute defines "residence" as "[a] location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year." 42 Pa.C.S. § 9792.[3] The court reasoned that the statutory language of "30 consecutive days or more" required a "residence" to have some degree of permanence. *Wilgus*, at 1187. The court further reasoned that the General Assembly's policy statement referencing community notification intended a residence to be a fixed geographical location within a neighborhood. *Id.*

The court then looked to decisions from other states for interpretation and application of the meaning of "residence." Using these cases and a dictionary definition, the court concluded the statutory definition of "residence" intended to convey a somewhat permanent location, and this interpretation furthered the purpose of Megan's Law, which is to provide

2. *Pickett* has been superseded by statute to include registration requirements "whether or not the person has a fixed residence." RCW § 9A.44.130(1)(a).

3. Senate Bill 1183, signed into law December 20, 2011, has amended the statute to include:

> a temporary habitat or other temporary place of abode or dwelling, including, but not limited to, a homeless shelter or park, where the individual is lodged.

42 Pa.C.S. § 9792 (*amended by* Act 2011–111 (S.B.1183), P.L. 446, § 8). Obviously, appellee was charged under the previous statute.

notice to residents that sexual predators are living in their area. The court stated, "Megan's Law, as enacted by the Pennsylvania Legislature, simply does not cover the situation presented by a homeless person without a fixed place of habitation of some degree of permanence." *Id.,* at 1186. Accordingly, the court held appellee had no residence and therefore could not comply with registration requirements. *Id.,* at 1189.

The Commonwealth appealed, and we granted allocatur on the following issue:

Did the courts below err by concluding that a defendant who provides an address and subsequently becomes homeless has no duty to comply with the registration requirements of Megan's Law, such that evidence consistent with these circumstances would be insufficient to support a verdict of guilty of failure to register?

*Commonwealth v. Wilgus,* 605 Pa. 313, 989 A.2d 340, 340 (2010) (table). "These issues pose purely legal questions; thus, this Court's review of the Superior Court's determinations is plenary and *de novo." Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 886 (2010). (citation omitted).

 "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "Words and phrases [of a statute] shall be construed according to rules of grammar and according to their common and approved usage...." *Id.,* § 1903(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation Props., LLP v. Chanceford Twp. Board of Supervisors,* 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (citations omitted).

The Commonwealth argues the Superior Court erred in finding the evidence insufficient to conclude appellee had a "residence" as defined in Megan's Law. The Commonwealth contends the Superior Court incorrectly interpreted the statute and mistakenly relied on *Twine,* because in that case, "residence" was not defined by statute. The Commonwealth

further argues appellee did have a residence—it was outdoors around Second and Market Streets in downtown Harrisburg, and he could have registered this location. The Commonwealth asserts appellee could have alternatively registered the soup kitchen as his residence. The Commonwealth further argues even if the areas where appellee slept while homeless could not be considered a residence, he was still required to notify state police for not residing at the previously registered 1708 Market Street; this was a change of residence, regardless of whether he had a new address to report. The Commonwealth notes the Superior Court did not consider the issue of whether appellee's not living at 1708 Market Street constituted a change of residence.

Appellee argues he was not in violation of Megan's Law because it requires registration of a residence, which he did not have because he was homeless. He also contends the registration requirements in 18 Pa.C.S. § 4915 are unconstitutionally vague as applied to homeless sex offenders because they do not adequately define "residence" to include transient individuals.[4] He contends a plain reading of the statute does not specify compliance measures for homeless or transient offenders; therefore, he believes the registration requirements do not apply to him. He claims we should follow *Twine* and *Pickett.* Appellee further claims registering as homeless would have also placed him in violation because he did not reside at the soup kitchen and police may not have been able to locate him at any given time in a general area. Appellee argues if it is acceptable for a post office box or general area to be reported, then those words should be explicit in the statute. Appellee further contends requiring homeless offenders to register is against the Legislature's intent, stating a literal reading of the statute indicates penalty provisions do

---

4. We have held "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 604 Pa. 176, 985 A.2d 915, 924 (2009) (citations omitted). Appellee raises his constitutional claim in his summary of argument but fails to develop the issue in his brief. Furthermore, we did not grant review on this issue; accordingly, we will not address the constitutional issue.

not apply to people who do not reside or intend to reside in one location for at least 30 consecutive days.

In enacting the legislation requiring registration for sexually violent predators and other sexual offenders, the Legislature stated:

> It is hereby declared to be the intention of the General Assembly to ... protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood.

42 Pa.C.S. § 9791(b). Thus, the statute reveals the Legislature found because of the high risk of recidivism of sex offenders, communities are best protected if the police and public are provided information about sexual offenders. Accordingly, Pennsylvania's Megan's Law requires:

> (a) **Registration.—**
>
> (1) Offenders and sexually violent predators shall be required to register with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution or upon the commencement of a sentence of intermediate punishment or probation. For purposes of registration, offenders and sexually violent predators shall provide the Pennsylvania State Police with all current or intended residences, all information concerning current or intended employment and all information concerning current or intended enrollment as a student.
>
> (2) Offenders and sexually violent predators shall inform the Pennsylvania State Police within 48 hours of:
>
>> (i) Any change of residence or establishment of an additional residence or residences.

*Id.,* § 9795.2.[5] The statute defines "residence" as "[a] location where an individual resides or is domiciled or intends to be

---

5. Related to notification of change of residence, the amended statute now includes:

> In the case of an individual who has a residence as defined in paragraph (2) of the definition of "residence" set forth in section

domiciled for 30 consecutive days or more during a calendar year." *Id.*, § 9792.

 The statute is clear. All offenders and sexually violent predators, which includes appellee, shall inform the Pennsylvania State Police within 48 hours of any change of residence. Because of the language that all *current or intended residences* are required to be reported, it is equally clear the Legislature anticipated residences may change and wanted to ensure all offenders reported a location to police.

*Twine* and *Pickett*, on which the Superior Court and appellee rely, are inapposite because both involved statutes that did not define "residence." [6] In those cases, the courts used the rules of statutory construction to determine a meaning of "residence" for registration purposes. Because "residence" is defined in Pennsylvania's Law, we do not need to look beyond

9792 (relating to definitions), the individual shall inform the Pennsylvania State Police of the following:
 (A) the location of a temporary habitat or other temporary place of abode or dwelling, including a homeless shelter or park, where the individual is lodged;
 (B) a list of places the individual eats, frequents and engages in leisure activities and any planned destinations, including those outside this Commonwealth; and
 (C) the place the individual receives mail, including a post office box.
The duty to provide the information set forth in this subparagraph shall apply until the individual establishes a residence as defined in paragraph (1) of the definition of "residence" set forth in section 9792. If the individual who has a residence as defined in paragraph (2) of the definition of "residence" set forth in section 9792 changes or adds to the places listed in this subparagraph during a 30–day period, the individual shall list these when re-registering during the next 30–day period.
42 Pa.C.S. § 9795.2(a)(2)(i) (amended December 20, 2011).

**6.** *Twine* relied in part on *Iverson*, which also used the terms "residence" and "address" interchangeably and used the term "living address." The terms were not defined, and the Minnesota court found the statute did not apply to the homeless appellant because he did not have an address to report. However, the court also found that "a bald assertion that one is homeless may not preclude application of the residence requirements of the statute.... Compliance is required, even for homeless offenders, if they live somewhere where mail can be received and they can provide five days notice that they will be going there." *Iverson*, at 353.

the plain language of the statute. In *Twine*, the court noted "address" and "residence" were used interchangeably, and thus the Superior Court's reliance on *Twine* for a definition and context of "residence" created an unintended expansion of the meaning.

Furthermore, the facts of *Twine* and *Pickett* show the offenders there had previously been in compliance. When Twine became homeless, he verbally notified a detective in the sex offender registry department and told him he did not have a residence to register. *Twine*, at 1135. When the appellant in *Pickett* became homeless, he informed police he would register as soon as he obtained a new address. *Pickett*, at 585. Courts in those cases dealt with appellants who reported the change when they became homeless. Appellee in the present case was never in compliance, and he never attempted to notify police that he was homeless or that his residence had changed from what he initially reported.

The Supreme Court of Michigan has recently addressed this issue; while not binding, its decision is instructive. In *People v. Dowdy*, 489 Mich. 373, 802 N.W.2d 239 (2011), the appellee stayed at a homeless shelter upon his release from prison until he was informed they did not allow sex offenders to stay there. He became homeless, but failed to notify the police that his residence had been vacated or changed as required by statute. Under the Michigan statute, a sex offender "shall notify the [police] having jurisdiction where his or her new residence or domicile is located or the department post of the individual's new residence or domicile within 10 days after the individual changes or vacates his or her residence [or] domicile. . . ." MCL 28.725(1) (2006), *amended by* MCL 28.725(1)(a) (2011).[7] The statute defined "residence" for purposes of regis-

---

7. The amended statute reads:

An individual required to be registered under this act *who is a resident of this state* shall report *in person* and notify *the registering authority* having jurisdiction where his or her residence or domicile is located *immediately* after any of the following occur:

(a) The individual changes or vacates his or her residence or domicile.

MCL 28.725(1)(a) (2011) (emphasis added to show changes).

tration as "that place at which a person habitually sleeps, keep his or her personal effects, and has a regular place of lodging." MCL 28.722(g) (2005), *amended by* MCL 28.722(p) (2011).[8] The court found the obligation to notify police of a new residence was triggered when the offender changed or vacated his previous residence, not when the new residence was established. *Dowdy*, at 244–45. Based on definitions in the statute, the court found homeless offenders were still required to comply with the statute's reporting requirements. *Id.*, at 249.

■■ Appellee intended to live at the Market Street address reported to prison authorities prior to his release. There is no question he considered this his intended "residence" when he provided the address to prison authorities, and this was his "residence" for Megan's Law reporting requirements. When there was no vacancy, there was a change in his intent to live at that address, and he was required to inform police within 48 hours of that change. It is clear from the plain language of the statute, as in *Dowdy*, appellee's obligation to notify police was triggered when he changed his previous residence, not when his new residence was established.

Appellee argues that had he reported the soup kitchen or the general outdoor area where he was sleeping, police may not have been able to find him, and thus he still would have been found non-compliant. This argument is without merit, because by at least notifying police he was not living at the previously registered address, he would have been in compliance with registration regulations. This would have alerted police to the change in appellee's location, and would have served the purpose of the statute, which is to provide information to police and the local community.

Appellee also argues that because he never spent more than 20 hours at any one place, that he would never have been able

8. The amendment added, *inter alia*, the following provision to the statutory definition of "residence": "If a person is homeless or otherwise lacks a fixed or temporary residence, residence means the village, city, or township where the person spends a majority of his or her time." *Id.*, 28.722(p) (2011).

to comply with the 48–hour notification requirement, and would never have met the definition of "residence" because he would not reside in any place for 30 consecutive days. Neither of these arguments provides any exception to registration requirements for homeless offenders. The statute clearly defines residence as the "location" where an offender "resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year." 42 Pa.C.S. § 9792. The inclusion of the word "intends" indicates the Legislature anticipated a fixed residence might be uncertain for some offenders, and this language includes those who do not have a permanent residence. As appellee certainly intended to live at the reported Market Street address for at least 30 days, there is no doubt this was a "residence" under the statute; he changed this residence when he did not reside there.

Appellee made no attempt whatsoever to comply with the registration requirements, and the belief that police may not have been able to find him did not excuse him from reporting a change in his location. As the court in *Dowdy* noted, "difficulties in *verifying* an offender's information do not excuse the offender from *complying* with [registration] requirements." *Dowdy*, at 247.

█ Pennsylvania's Megan's Law clearly requires sexually violent predators to notify Pennsylvania State Police of all current and intended residences, and to notify police of a change of residence. Unlike some other states that have ruled on this issue, Pennsylvania clearly defines "residence" for registration purposes. Appellee reported an intended residence to prison authorities, and was in violation of registration requirements when he failed to report a change of residence when he no longer intended to live there. There is no exception for homeless offenders, and the Superior Court was incorrect in reading such an exception into the statute. Accordingly, we reverse the ruling of the Superior Court, reinstate appellee's conviction, and remand to the trial court for reimposition of appellee's sentence.

Order reversed; case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Justices SAYLOR, TODD, McCAFFERY and ORIE MELVIN join the opinion.

Chief Justice CASTILLE files a dissenting opinion in which Justice BAER joins.

Chief Justice CASTILLE, dissenting.

I respectfully dissent. Notably, the General Assembly has recently amended the statute at issue and addressed the obvious gap in its treatment of the registration requirement as applied to homeless offenders. The Majority's analysis of the prior statute, impressively intricate and lawyerly though it certainly is, ultimately proves too much. This is a penal statute that threatens a loss of freedom for those who would run afoul of it.[1] As such, this Court is obliged to strictly construe it in favor of the defendant. Unlike the amended statute, this prior version does not, by its plain terms, address the situation of the homeless offender, who does not, and cannot, register a "residence" that would fit within the statutory definition of that term. I would not ignore the rule of lenity, which derives from the requirement of strict construction of criminal statutes, in pursuit of a legislative purpose that, however salutary and sensible, is not clearly and unambiguously conveyed in the written terms of the statute before us.

Drafting legislation is no easy task. Even the most carefully drafted provisions may fail to anticipate every possible scenario under which the statute may be applied. The consequences of statutory interpretation can affect citizens in a myriad of ways, including: their professions and business

---

1. Although this Court has held that the registration requirements of Megan's Law are not in and of themselves punitive, *Commonwealth v. Lee*, 594 Pa. 266, 935 A.2d 865, 880 (2007), appellee herein was arrested and charged under the Crimes Code with, *inter alia*, "Failure to comply with registration of sexual offenders requirements," 18 Pa.C.S. § 4915, which is subject to felony grading and sentencing, and thus, clearly is penal in nature.

relationships, their property, their personal wealth, their freedom of movement, and most seriously, their very freedom itself. In the Statutory Construction Act, the General Assembly has recognized that there are some classes of statutory provisions whose effect upon the citizenry is of sufficient moment that ambiguities must be resolved in favor of the citizenry, *i.e.*, those provisions must be strictly construed. First among the classes so designated for strict construction are penal provisions. 1 Pa.C.S. § 1928(b)(1).

The requirement of strict construction of penal provisions derives from the common law. In one form or another, the concept has been part of our jurisprudence as far back as the early national era. *See Commonwealth v. Messinger*, 1 Binn. 273 (Pa.1808) (Yeates, J., concurring) ("I fully assent to the established principle, that penal laws are to be construed strictly, and that they are not to be carried beyond their letter. . . . It is sufficient to state that our books teem with authorities, shewing that penal statutes shall not be construed beyond this strict letter."). The theory is as obvious as it is salutary, and is rooted in notions of personal liberty and due process, *i.e.*, the requirement of fair notice when liberty is at risk. The modern iteration of the rule has been described by the U.S. Supreme Court as being premised upon two policies:

> First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so [far] as possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931) (Holmes, J.). Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity.

*United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (footnote and one citation omitted). The High Court further explicated the underlying principle in its unanimous decision in *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), noting that, "the

touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 264 & n. 1, 267, 117 S.Ct. 1219. The Court further explained that:

> There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Second, as a sort of "junior version of the vagueness doctrine," the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

*Id.* at 266, 117 S.Ct. 1219 (citations omitted). *Accord Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244, 246 (1976); *Commonwealth v. Glover,* 397 Pa. 543, 156 A.2d 114, 116 (1959) (quoting *Commonwealth v. Exler,* 243 Pa. 155, 89 A. 968, 971 (1914) for proposition that "when a criminal statute calls for construction, it is not the construction that is supported by the greater reason that is to prevail but that one which, if reasonable, operates in favor of life and liberty."); *cf. United States v. Hayes,* 555 U.S. 415, 436–37, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (Roberts, C.J., joined by Scalia, J., dissenting) ("If the rule of lenity means anything, it is that an individual should not go to jail for failing to conduct a 50–state survey or comb through obscure legislative history. Ten years in jail is too much to hinge on the will-o'-the-wisp of statutory meaning pursued by the majority.").

There are two further concerns of note in construing the criminal consequences of the registration requirement here. First is the recognition that the rule of lenity itself has limits:

The need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded, nor does it override the more general principle that the words of a statute must be construed according to their common and approved usage. It does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt. Significantly, a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope.

*Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001) (citations and footnote omitted). Second is the recognition that the penal provision at issue did not have a common law analogue. This point of distinction is significant because this Court has recognized that: "Statutes which embody well-settled common law norms stand on a footing somewhat different than statutes which attempt to circumscribe conduct newly proscribed. Because the former group merely reiterate customary normative standards, the prohibitory language need not be drawn with the precision that a newly-conceived interdiction might require." *Heinbaugh*, 354 A.2d at 247 (citation omitted).

In my view, the registration provision at issue here, prior to its recent amendment, reflects at best a latent ambiguity concerning what an offender, such as appellee here, who is both subject to the registration requirements of Megan's Law and homeless, can do to avoid criminal sanction.[2] At the time

2. This Court has described a "latent ambiguity" as arising when a statute that may seem clear on its face becomes unclear or develops conflicting viable meanings upon application in certain contexts or situations. When a latent ambiguity is presented, courts may rely upon canons of construction no less than in the instance of a patent ambiguity. *Malt Beverages Distributors Ass'n v. Pa. Liquor Control Bd.*, 601 Pa. 449, 974 A.2d 1144, 1153 (2009); *Commonwealth v. McCoy*, 599 Pa. 599, 962 A.2d 1160, 1167 (2009); *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 663 (1982).

of appellee's offense, the relevant statutory provision defined "residence" for purposes of sexual offender registration as follows: "A location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year." 42 Pa.C.S. § 9792. Megan's Law directs that upon release from incarceration, offenders are to provide state police with "all current or intended residences"; offenders are thereafter to inform state police of any "change of residence or establishment of an additional residence or residences" within forty-eight hours. 42 Pa.C.S. § 9795.2(a)(1). According to the Majority, when the location appellee initially registered as his intended residence, 1708 Market Street in Harrisburg, did not work out, appellee's obligation to notify police of a change in his "residence" was triggered; and, the fact that appellee thereafter became homeless did not negate his registration obligations. Nor did the fact that, due to appellee's ensuing homelessness, he never met the thirty day "consecutive domicile" requirement of "residence" or the forty-eight hour notification period for a change of residence.

The potential exposure to criminal sanction in this statutory construct turns upon the word "residence," which is specifically defined in a way that includes a temporal limitation of thirty days. The Majority reasons that the inclusion of "intended residences" in the statutory scheme indicates legislative anticipation that registrants' residences might not be fixed, and that this potentiality would not excuse a registrant's noncompliance. The Majority concludes: "There is no exception for homeless offenders, and the Superior Court was incorrect in reading such an exception into the statute," the purpose of which is to ensure that communities where offenders may live are notified of and protected from the possibility of future predation. Majority Op. at 43, 40 A.3d at 1208.

The Majority's intricate unraveling of the statute, in pursuit of an effectuation of the purpose behind the provision, may make perfect sense to lawyers, but that is not the test when construing a provision that would deprive a person of his or her liberty. The statute, as drafted, simply does not by its

terms account for homeless or transient offenders. The definition at Section 9792 needs no additional construction if applied to a registrant fortunate enough to secure a physical place to live upon release: "A location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year." Although thirty days of predictable and reliable living arrangements does not seem like a difficult prospect, the reality is that in this day and age, many persons lack even that little security. And, indeed, the consequences of criminal prosecution no doubt make convicted offenders less likely able than law abiding citizens to secure reliable or stable living arrangements. So it was here, as the evidence shows that appellee slept in various places on the streets of Harrisburg, evidently somewhere different on many nights, but kept a locker and received mail at a soup kitchen. Offenders such as appellee, by definition, have no "residence" as that term is defined in the statute. Thus, as applied to a homeless registrant who is the "common person" to whom the statute applies, residence is, at best, ambiguous. As such, the governing definition of residence is also, at best, silent on the nature of the obligation of such persons. To find a basis to punish offenders who lack a statutory residence to report, one must go behind the plain language. In such circumstances, the mandate of strict construction/lenity, which favors liberty, must apply; and, in my view, that principle dictates the outcome here. For certain, a park bench does not a residence make.

Furthermore, one need not look far for an unambiguous manner in which to address the circumstance of a transient or homeless offender who is subject to Megan's Law registration requirements. As the Majority notes, the General Assembly has revised the registration provisions and has explicitly addressed the unique circumstance of homeless offenders. The statutory definition of "residence" in the amended version of 42 Pa.C.S. § 9792, which became effective on February 21, 2012, now reads:

With respect to an individual required to register under this subchapter, any of the following:

(1) A location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year.

(2) In the case of an individual who fails to establish a residence as set forth in paragraph (1), a temporary habitat or other temporary place of abode or dwelling, including, but not limited to, a homeless shelter or park, where the individual is lodged.

This revision makes clear the obligation of homeless offenders; the contrast to the prior definition, silent or ambiguous at best, is telling.

Because I respectfully disagree with the Majority's statutory construction, which ignores the rule of lenity, I dissent.

Justice BAER joins the opinion.