**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Harvey Elwood DEMMITT,**
**Jr., Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2010.

Filed May 1, 2012.

Nathan L. Boob, Assistant District Attorney, Bellefonte, for Commonwealth, appellant.

David R. Crowley, Bellefonte, for appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, BENDER, BOWES, DONOHUE SHOGAN, ALLEN, OLSON and OTT, JJ.

OPINION BY SHOGAN, J.:

The Commonwealth of Pennsylvania ("the Commonwealth") appeals the July 15, 2009 order entered in the Centre County Court of Common Pleas that granted Harvey Elwood Demmitt, Jr.'s ("Appellee") motion for a new trial after a jury convicted him of failing to comply with registration of sexual offender requirements pursuant to 18 Pa.C.S.A. § 4915(a)(1). The Commonwealth argues Appellee was not entitled to a new trial as Megan's Law[1] should not be construed to allow sexually violent predators to circumvent the requirement of registering a location as their "residence" by asserting a defense of homelessness. We agree and reverse.

On January 29, 2002, Appellee was convicted of indecent assault[2] and corruption of minors[3] in York County. At that time, Appellee was on parole for his prior January 15, 1998 convictions of indecent assault, corruption of minors, and statutory sexual assault. As a result, the trial court revoked Appellee's parole and sentenced him to 15–48 months of imprisonment for the 2002 convictions to be served consecutively to a one (1) to three (3) year term of imprisonment on his 1998 statutory sexual assault conviction.

The trial court determined that Appellee is a Sexually Violent Predator and notified him of his obligation under Megan's Law to register with the Pennsylvania State Police on a quarterly basis each year for the rest of his life. N.T. Trial, 1/12/09, at 30–33. Appellee was informed of the specific requirement that he provide the State Police with a place of intended residence upon release from his incarceration at the State Correctional Institute at Rockview. *Id.*

As Appellee would complete his maximum sentence on February 19, 2008, SCI Rockview records specialist Diane Zelznick reviewed the Megan's Law requirements with Appellee to make sure he understood his reporting obligations. N.T. Trial, 1/12/09, at 58–59. Appellee informed Zelznick that he had attempted to find a place to live upon his release from incarceration, but had been unsuccessful. *Id.* at 60. Appellee was very upset because he did not want to be released to the street and

---

1. 42 Pa.C.S.A. §§ 9791–9799.9. "[T]he General Assembly amended Megan's Law II in 2004, with an effective date of January 24, 2005 (known as "Megan's Law III")." *Commonwealth v. Hitner*, 910 A.2d 721, 723 n. 6 (Pa.Super.2006), *appeal denied*, 592 Pa. 772, 926 A.2d 441 (2007) (quotation omitted). Here, we conclude that Appellee is subject to Megan's Law III. *Id.* (citing *Commonwealth v. Benner*, 853 A.2d 1068, 1072 (Pa.Super.2004)

(concluding the most current version of Megan's Law applies as long as the defendant remains in the custody of correctional authorities to discharge any part of his sentence for the sex offense)).

2. 18 Pa.C.S.A. § 3126.

3. 18 Pa.C.S.A. § 6301.

asked to stay in SCI Rockview or to be transferred to the Centre County Prison. *Id.* at 62–63. On a later occasion, when Appellee was informed he would be arrested for failure to provide an address, he expressed relief that police would take him into custody. *Id.* at 64–65. When asked to explain why he did not want to be released, Appellee expressed fear he would commit another sexual offense, stating, "You don't understand. You can't let me go. You can't let me go. I will reoffend." *Id.*

As SCI Rockview officials informed the State Police that Appellee had not indicated an intended residence on his registration form, Trooper Brian Wakefield proceeded to SCI Rockview on February 19, 2008, the date Appellee was to be released. N.T. Trial, 1/12/09, at 86–90. When Appellee exited the prison, Trooper Wakefield identified himself and asked if Appellee was aware of his registration requirements under Megan's Law. *Id.* at 90. Appellee affirmed that he was aware of his obligations and Trooper Wakefield asked Appellee if he had any intended residence. *Id.* Appellee answered in the negative. *Id.* at 91. After Trooper Wakefield took Appellee into custody and gave him his *Miranda*[4] rights, he inquired whether Appellee felt he would commit additional other sexual offenses if released. *Id.* at 91–93. Appellee replied, "I will. I will go back to square one with nowhere to go. I have-I do have support but I can't count on it." *Id.* at 92. Appellee again confessed that he should not be released as he would reoffend. *Id.* at 93.

After a trial was held on January 19, 2008, a jury convicted Appellee of failing to comply with registration of sexual offender requirements pursuant to 18 Pa.C.S.A. § 4915(a)(1). On February 23, 2009, the trial court sentenced Appellee to a term of incarceration of not less than one (1) year nor more than seven (7) years of imprisonment with credit for time served.

On February 26, 2009, Appellee filed a post-sentence motion, requesting, *inter alia,* a new trial based on an allegation that the trial court answered a jury question with an incorrect statement of the law. Post–Sentence Motion, 2/26/09, at ¶¶ 15–33. Specifically, Appellee alleged that one could not be convicted for failing to register a residence, if one was homeless. *Id.* Based on *Commonwealth v. Wilgus,* 975 A.2d 1183 (Pa.Super.2009) (*"Wilgus I"*), which set aside a conviction for failing to register a residence where the defendant was homeless, the trial court granted his post-sentence motion and granted Appellee a new trial. Order, 7/15/09. On appeal, the Commonwealth challenges the trial court's order granting Appellee a new trial.

We begin our discussion by setting forth our standard of review. We point out that "[a] trial court has an 'immemorial right to grant a new trial, whenever, in its opinion, the justice of the particular case so requires.'" *Commonwealth v. Dorm,* 971 A.2d 1284, 1288 (Pa.Super.2009) (quoting *Commonwealth v. Powell,* 527 Pa. 288, 590 A.2d 1240, 1242 (1991)). On appeal, we review such a ruling to determine if there was an abuse of discretion. *Id.*

As noted above, in the case at bar, the trial court relied on *Wilgus I* in granting Appellee post-sentence relief. However, the Commonwealth sought allowance of appeal in *Wilgus I,* which was granted on February 16, 2010. *Commonwealth v. Wilgus,* 605 Pa. 313, 989 A.2d 340 (2010). On March 26, 2012, the Supreme Court reversed *Wilgus I. Commonwealth v. Wilgus,* 40 A.3d 1201 (Pa.2012) (*"Wilgus II"*).

---

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ In *Wilgus II,* our Supreme Court held that "Pennsylvania's Megan's Law clearly requires sexually violent predators to notify Pennsylvania State Police of all current and intended residences, and to notify police of a change of residence." *Wilgus II,* at 1208. "There is no exception for homeless offenders, and the Superior Court was incorrect in reading such an exception into the statute." *Id.* Thus, pursuant to the Pennsylvania Supreme Court's ruling in *Wilgus II,* homelessness is not a defense for failing to satisfy the registration requirements under Megan's Law.[5]

■ As such, we are bound to comport with the Supreme Court's decision, and we conclude that the trial court erred in granting Appellee's motion for a new trial. Accordingly, we reverse the order of the trial court and reinstate the judgment of sentence entered on February 23, 2009. *See Commonwealth v. Yohe,* 39 A.3d 381 (Pa.Super.2012) (reversing the trial court's granting of a new trial and reinstating the judgment of sentence).

Order reversed. Judgment of sentence reinstated. Jurisdiction relinquished.

BENDER, J., files a Concurring Opinion.

Concurring Opinion By BENDER, J.

[W]hen a criminal statute calls for construction, it is not the construction that is supported by the greater reason that is to prevail but that one which, if reasonable, operates in favor of life and liberty.

---

5. We are cognizant of the changes to Megan's Law that occurred following this Court's decision in *Wilgus I* and prior to the Supreme Court's reversal in *Wilgus II.* On December 20, 2011, the General Assembly amended Megan's Law with respect to the definition of residence and its requirements. The added language to Sections 9792 and 9795.2 is denoted in bold type below:

"Residence." **With respect to an individual required to register under this subchapter, any of the following:**
(1) A location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year.
(2) **In the case of an individual who fails to establish a residence as set forth in paragraph (1), a temporary habitat or other temporary place of abode or dwelling, including, but not limited to, a homeless shelter or park, where the individual is lodged.**
42 Pa.C.S.A § 9792 (emphasis added). The General Assembly also added language to Section 9795.2 concerning sexually violent predators with respect to paragraph two in the definition of residence:
(2) Offenders and sexually violent predators shall inform the Pennsylvania State Police within 48 hours of:
(i) Any change of residence or establishment of an additional residence or residences. **In the case of an individual who has a residence as defined in paragraph (2) of the definition of "residence" set forth in section 9792 (relating to definitions), the individual shall inform the Pennsylvania State Police of the following:**
**(A) the location of a temporary habitat or other temporary place of abode or dwelling, including a homeless shelter or park, where the individual is lodged;**
**(B) a list of places the individual eats, frequents and engages in leisure activities and any planned destinations, including those outside this Commonwealth; and**
**(C) the place the individual receives mail, including a post office box.**
**The duty to provide the information set forth in this subparagraph shall apply until the individual establishes a residence as defined in paragraph (1) of the definition of "residence" set forth in section 9792. If the individual who has a residence as defined in paragraph (2) of the definition of "residence" set forth in section 9792 changes or adds to the places listed in this subparagraph during a 30–day period, the individual shall list these when re-registering during the next 30–day period.**
42 Pa.C.S.A. § 9795.2(A)(2)(ii) (emphasis added).

*Commonwealth v. Exler*, 243 Pa. 155, 89 A. 968, 971 (1914).

I concur in the Majority's decision which, as my esteemed colleagues correctly recognize, is constrained and delimited by our Supreme Court's majority opinion in *Commonwealth v. Wilgus*, 40 A.3d 1201 (Pa.2012). Nevertheless, I am troubled by the interpretation *Wilgus* imposes on the residence reporting requirement of Megan's Law section 9792, a provision that, in my opinion, is insolubly ambiguous and cannot be read to exact a criminal penalty on one who, because he is homeless, has no statutorily cognizable "residence" to report. *See* 42 Pa.C.S. § 9792 (defining "residence" as "[a] location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year").

In an incisive dissent, Mr. Chief Justice Castille, joined by Mr. Justice Baer, disagreed with the *Wilgus* majority's construction, finding its lawyerly perspicacity to be "too much." *Wilgus*, 40 A.3d at 1208 (Castille, C.J., dissenting). I write separately to restate the seminal elements of that dissent which, given the "Catch–22" the majority ruling imposes on the defendant, is equally applicable here.

> This is a penal statute that threatens a loss of freedom for those who would run afoul of it. As such, this Court is obliged to strictly construe it in favor of the defendant. Unlike the amended statute, this prior version does not, by its plain terms, address the situation of the homeless offender, who does not, and cannot, register a "residence" that would fit within the statutory definition of that term.
>
> \* \* \* \*
>
> In my view, the registration provision at issue here, prior to its recent amendment, reflects at best a latent ambiguity concerning what an offender, such as

appellee here, who is both subject to the registration requirements of Megan's Law and homeless, can do to avoid criminal sanction. At the time of appellee's offense, the relevant statutory provision defined "residence" for purposes of sexual offender registration as follows: "A location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year." 42 Pa.C.S. § 9792.

> \* \* \* \*
>
> The potential exposure to criminal sanction in this statutory construct turns upon the word "residence," which is specifically defined in a way that includes a temporal limitation of thirty days. The Majority reasons that the inclusion of "intended residences" in the statutory scheme indicates legislative anticipation that registrants' residences might not be fixed, and that this potentiality would not excuse a registrant's noncompliance. The Majority concludes: "There is no exception for homeless offenders, and the Superior Court was incorrect in reading such an exception into the statute," the purpose of which is to ensure that communities where offenders may live are notified of and protected from the possibility of future predation.
>
> The Majority's intricate unraveling of the statute, in pursuit of an effectuation of the purpose behind the provision, may make perfect sense to lawyers, but that is not the test when construing a provision that would deprive a person of his or her liberty. *The statute, as drafted, simply does not by its terms account for homeless or transient offenders.* The definition at Section 9792 needs no additional construction if applied to a registrant fortunate enough to secure a physical place to live upon release: "A location where an individual resides or is domiciled or intends to be domiciled for

30 consecutive days or more during a calendar year." Although thirty days of predictable and reliable living arrangements does not seem like a difficult prospect, the reality is that in this day and age, many persons lack even that little security. And, indeed, the consequences of criminal prosecution no doubt make convicted offenders less likely able than law abiding citizens to secure reliable or stable living arrangements. So it was here.... Offenders such as appellee, by definition, have no "residence" as that term is defined in the statute. Thus, as applied to a homeless registrant who is the "common person" to whom the statute applies, residence is, at best, ambiguous. As such, the governing definition of residence is also, at best, silent on the nature of the obligation of such persons. To find a basis to punish offenders who lack a statutory residence to report, one must go behind the plain language. In such circumstances, the mandate of strict construction/lenity, which favors liberty, must apply; and, in my view, that principle dictates the outcome here. For certain, a park bench does not a residence make.

*Id.* at 1208, 1210–11 (emphasis added).

Consistent with the foregoing analysis, I discern scant basis on which to penalize this defendant. Indeed, I find it difficult to overcome the notion that his only real "offense" is homelessness. Nevertheless, inasmuch as the majority opinion in *Wilgus* determines otherwise, I acknowledge that the Majority in this case is constrained in the ruling we hand down today. Accordingly, I concur in its decision.