J-A26041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| HARVEY ELWOOD DEMMITT, JR. | |
| Appellant | No. 233 MDA 2014 |

Appeal from the Judgment of Sentence February 23, 2009
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000388-2008

BEFORE: BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.: **FILED NOVEMBER 04, 2015**

Appellant Harvey Demmitt, Jr. ("Appellant") appeals the judgment of sentence entered on February 23, 2009, by the Centre County Court of Common Pleas. We reverse and remand for a new trial.

The trial court summarized the facts and procedural history of this matter as follows:

> On February 19, 2008, [Appellant] was arrested and charged with Failure to Comply with Registration of Sexual Offenders Requirements, 18 Pa.C.S.A. § 4915. [Appellant] was charged on the same day that [Appellant] was released from the State Correctional Institution at Rockview at the completion of his revocation sentence on an earlier charge. Prior to his release, having been previously determined to be a Sexually Violent Predator, [Appellant] met with SCI-Rockview staff to review the

residence reporting requirements under Megan's Law[1] for Sexually Violent Predators. Several SCI-Rockview staff members worked with [Appellant] to attempt to secure housing for him. The staff specifically looked for a structured living arrangement that could accommodate [Appellant's] mental illness. Unfortunately, the staff members were unable to find any facility in Pennsylvania with an available bed. [Appellant] also attempted to secure a residence with his parents, other relatives, and his former foster parents, but those efforts were similarly unsuccessful.

Ten days prior to his scheduled release, [Appellant] met with a records[] officer at SCI-Rockview and told the officer that he wanted to either stay at SCI-Rockview or walk to the Centre County Correctional Facility, the local county prison, because he was otherwise homeless. Eventually, [Appellant] told SCI-Rockview staff that he did not have an intended residence and therefore did not intend to comply with the reporting requirements. Accordingly, upon release, [Appellant] was met by Trooper Brian Wakefield of the Pennsylvania State Police, who, after confirming that [Appellant] was not in compliance with the registration requirements, arrested him, read him his **Miranda** rights, and eventually charged him with Failure to Comply with Registration of Sexual Offenders Requirements, 18 Pa.C.S.A. § 4915.

[Appellant] was found guilty of this charge by a jury on January 13, 2009. Thereafter, on February 23, 2009, [Appellant] was sentenced to 1 to 7 years in a State Correctional Facility with credit for 371 days time served. On February 26, 2009, [Appellant] filed [p]ost-[s]entence [m]otions arguing, *inter alia*, that one could not be convicted for failing to register a residence if one was homeless. At trial, [Appellant] requested a [p]oint for [c]harge to inform the jury that it could not find [Appellant] guilty if he were homeless. The

---

[1] Megan's Law III applied at the time of Appellant's offense. **See** 42 Pa.C.S.A. §§ 9791–9799.9; **Commonwealth v. Demmit**, 45 A.3d 429, 430 (Pa.Super.2012), *appeal denied*, 67 A.3d 793 (Pa.2013).

Commonwealth did not object, and the [c]ourt said that it would read the charge. Ultimately, the [p]oint for [c]harge was not read to the jury. [Appellant] timely objected. After several hours of deliberation, the jury sent out a question as to whether a Sexually Violent Predator had to include a specific address on the registration form in order to be properly registered. The [c]ourt responded, over [Appellant's] objection, that for the form to be complete, it had to contain a specific intended residence.

After a hearing on July 15, 2009, the [c]ourt granted in part [Appellant's] [p]ost-[s]entence [m]otion, finding that it was constrained by the Superior Court's holding in **Commonwealth v. Wilgus**, 2009 PA Super. 116, 975 A.2d 1183, *rev'd* 40 A.3d 1201 (Pa.2012) ("**Wilgus I**"), to award [Appellant] a new trial. The **Wilgus I** Court found that the lower court had properly arrested judgment in a case where an offender was arrested for not providing his address due to his homelessness. Accordingly, [Appellant] was awarded a new trial. [Appellant] then filed a [m]otion for [r]econsideration on July 20, 2009, arguing that the proper remedy was not a new trial but instead an arrest of judgment.

Before the [c]ourt ruled on [Appellant's] [m]otion for [r]econsideration, the Commonwealth appealed on August 13, 2009, challenging the [c]ourt's order granting [Appellant] a new trial. The Superior Court did not decide the Commonwealth's appeal until May 1, 2012. In the interim, on March 26, 2012, the Supreme Court reversed **Wilgus I** and explained that "Pennsylvania's Megan's Law clearly requires sexually violent predators to notify Pennsylvania State Police of all current and intended residences, and to notify police of a change of residence. . . . There is no exception for homeless offenders, and the Superior Court was incorrect in reading such an exception into the statute." **Commonwealth v. Wilgus**, 40 A.3d 1201, 1208 (Pa.2012) ("**Wilgus II**")). Thereafter, on May 1, 2012, the Superior Court reversed this [c]ourt's July 15, 2009 Opinion and Order granting [Appellant] a new trial, and held that in accordance with **Wilgus II** homelessness was not a defense to a charge of failure to comply with sex offender registration requirements. [**Demmitt**, 45 A.3d at 432].

On May 13, 2013, [Appellant] filed a [m]otion to [r]ule on [p]ost-[s]entence [m]otions [o]utstanding at the [t]ime of the Commonwealth's [a]ppeal because the [c]ourt had not considered all of [Appellant's] [p]ost-[s]entence [m]otions before the appeal. This [c]ourt granted [Appellant's] [m]otion in an [o]pinion and [o]rder dated September 11, 2013, and held a hearing on the remaining motions on November 4, 2013. Thereafter both parties submitted briefs.

Trial Court Opinion and Order, Jan. 9, 2014, pp. 1-4 (footnote omitted). On January 9, 2014, the trial court denied the motions. Appellant filed a timely notice of appeal. Appellant filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and, on April 11, 2014, the trial court issued a Rule 1925(a) opinion adopting its January 9, 2014 opinion.

On December 1, 2014, this Court issued a memorandum holding the trial court's failure to instruct the jury that homelessness was a defense to the charged crime after informing counsel it would do so constituted reversible error. We reversed Appellant's judgment of sentence and remanded to the trial court.

On December 31, 2014, the Commonwealth of Pennsylvania filed a petition for allowance of appeal to the Supreme Court of Pennsylvania. On January 8, 2015, Appellant filed a cross-petition for allowance of appeal to the Supreme Court of Pennsylvania. On July 28, 2015, the Supreme Court denied the Commonwealth's petition for allowance of appeal. That same day, it granted Appellant's petition for allowance of appeal, vacated this

Court's order, and remanded the case to this Court to address Appellant's challenge to the sufficiency of the evidence and his constitutional challenge.

Appellant raises the following claims for our review:

> I. Was the evidence insufficient to establish that [Appellant] failed to comply with registration of sexual offender requirements as he clearly identified a place where he intended to reside, but the records officer refused to list this information on the registration form?
>
> II. As applied to the facts in this case, does Megan's Law constitute an illegal Bill of Attainder?
>
> III. Is [Appellant] entitled to a new trial where the court changed its ruling on [Appellant's] Points for Charge and took away [Appellant's] homelessness defense after [Appellant's] closing argument?
>
> IV. Was [Appellant] denied substantive due process of law such that he is entitled to a new trial where the Commonwealth, in order to avoid dismissal of the charges on pre-trial motions, told the trial court that it was not prosecuting [Appellant] because he was involuntarily homeless; then reneged on its earlier representations and argued that [Appellant] was guilty even if his homelessness was involuntary?

Appellant's Brief, pp. 5-6.

Appellant's first claim maintains the Commonwealth presented insufficient evidence because it failed to prove he did not register pursuant to Megan's Law. Appellant's Brief at 17-23. We disagree.

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a

reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003), *affirmed*, 870 A.2d 818 (2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Lehman*, 820 A.2d at 772 (quoting *DiStefano*, 782 A.2d 574). Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *DiStefano*, 782 A.2d at 582 (quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super.2000)).

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. *DiStefano*, 782 A.2d at 582 (quoting *Hennigan*, 753 A.2d at 253). Further, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

Appellant maintains he did not refuse to register or otherwise fail to provide registration information. Appellant's Brief at 19. He signed the registration form prepared by the Department of Corrections' personnel and

submitted to the required fingerprinting and photographing. *Id.* When he completed the form, he identified the State Correctional Institution at Rockview as his current residence. *Id.* Further, he informed the corrections officer that if he could not stay at SCI-Rockview, he would go to the county jail. *Id.* The corrections officer failed to record and transmit this intended residence to the state police. *Id.*

At the relevant time, the offense of failure to comply with registration of sexual offenders requirements was defined as follows:

> An individual who is subject to registration under 42 Pa.C.S. § 9795.1(a) (relating to registration) or an individual who is subject to registration under 42 Pa.C.S. § 9795.1(b)(1), (2) or (3) commits an offense if he knowingly fails to:
>
> (1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9795.2 (relating to registration procedures and applicability);
>
> (2) verify his address or be photographed as required under 42 Pa.C.S. § 9796 (relating to verification of residence); or
>
> (3) provide accurate information when registering under 42 Pa.C.S. § 9795.2 or verifying an address under 42 Pa.C.S. § 9796.

18 Pa.C.S. § 4915.[2]

---

[2] On December 20, 2011, the General Assembly enacted 18 Pa.C.S. § 4915.1, with an effective date of December 2012. Section 4915.1 replaced 18 Pa.C.S. § 4915.

The version of Megan's Law applicable at the time of Appellant's conduct required:

> Offenders and sexually violent predators shall be required to register with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution or upon the commencement of a sentence of intermediate punishment or probation. For purposes of registration, offenders and sexually violent predators shall provide the Pennsylvania State Police with all current or intended residences, all information concerning current or intended employment and all information concerning current or intended enrollment as a student.

42 Pa.C.S. § 9795.2.[3]  The statute defined "residence" as  "a location where an individual resides or is domiciled or intends to be domiciled for 30

_____

[3] On December 20, 2011, the General Assembly enacted Pennsylvania's Sex Offender Registration and Notification Act ("SORNA"), with an effective date of December 20, 2012, which replaced the prior Megan's Law, including § 9795.2.  SORNA now provides:

> (5) Address of each residence or intended residence, whether or not the residence or intended residence is located within this Commonwealth and the location at which the individual receives mail, including a post office box. If the individual fails to maintain a residence and is therefore a transient, the individual shall provide information for the registry as set forth in paragraph (6).
>
> (6) If the individual is a transient, the individual shall provide information about the transient's temporary habitat or other temporary place of abode or dwelling, including, but not limited to, a homeless shelter or park. In addition, the transient shall provide a list of places the transient eats, frequents and engages in leisure activities and any planned destinations, including those outside this Commonwealth. If the transient changes or adds to the places listed under this paragraph during a monthly period,

*(Footnote Continued Next Page)*

consecutive days or more during a calendar year." 42 Pa.C.S. § 9792. The Pennsylvania Supreme Court has found that "Pennsylvania's Megan's Law clearly requires sexually violent predators to notify Pennsylvania State Police of all current and intended residences, and to notify police of a change of residence." *Commonwealth v. Wilgus*, 40 A.3d 1201, 1208 (Pa.2012). The Court found there was no homelessness exception. *Id.*

Denise Zelznick, a records specialist at SCI-Rockview, testified that she met with Appellant ten days prior to his release from SCI-Rockview and he did not want to be released. N.T., 1/12/2009, at 56-57, 59-60. She stated: "[Appellant] wanted to stay at Rockview and if he couldn't stay at Rockview he wanted to go to the county prison because he had no place to go." *Id.* at 63. Ms. Zelznick notified the state police that Appellant had no intended residence but that they would continue searching for a residence. *Id.* A week later, Ms. Zelznick again met with Appellant. *Id.* at 63-64. She

*(Footnote Continued)* ———————————

> the transient shall list these when registering as a transient during the next monthly period. In addition, the transient shall provide the place the transient receives mail, including a post office box. If the transient has been designated as a sexually violent predator, the transient shall state whether he is in compliance with section 9799.36 (relating to counseling of sexually violent predators). The duty to provide the information set forth in this paragraph shall apply until the transient establishes a residence. In the event a transient establishes a residence, the requirements of section 9799.15(e) (relating to period of registration) shall apply.

42 Pa.C.S. § 9799.16(b)(5).

informed him he would be arrested if he did not have an intended residence. *Id.*, at 64. Ms. Zelznick testified that Appellant "was not upset that he was going to be arrested. He was actually relieved that they were going to come pick him up." *Id.*

The paperwork completed by Ms. Zelznick, and signed by Appellant, listed Rockview as his current residence and stated that he had no intended residence. N.T., 1/12/2009, at 65, 74; Exh. D5.

State Trooper Brian Wakefield testified that he and another trooper went to S.C.I. Rockview to meet Appellant upon his release. N.T., 1/12/2009, at 90. He asked Appellant some questions, including whether Appellant was aware he was required to register pursuant to Megan's Law, to which Appellant responded in the affirmative. *Id.* Appellant also was aware he had to provide an intended residence upon his release. *Id.* He informed Trooper Wakefield he did not have an intended residence. *Id.* at 90-91.

Both Ms. Zelznick and Trooper Wakefield testified that Appellant expressed concern that he would re-offend if released. N.T., 1/12/2009, at 64-65, 92-94.

The evidence presented, including that Appellant was aware he needed to provide an intended residence, informed Trooper Wakefield he did not have an intended residence, and was concerned he would re-offend,

sufficiently supported the jury's verdict that Appellant failed to register as required by Megan's Law.[4]

Appellant next claims that, as applied to him, SORNA constitutes an unconstitutional bill of attainder. Appellant's Brief at 24-34.

Article I, Section 10 of the United States Constitution provides that "[n]o State shall . . . pass any bill of attainder." The Pennsylvania Constitution provides: "No person shall be attainted of treason or felony by the Legislature." Pa. Const. Art. I, § 18. "A bill of attainder is defined as a legislative enactment which determines guilt and inflicts punishment upon an identifiable person or group without a judicial trial." *Commonwealth v. Mountain*, 711 A.2d 473, 478 (Pa.Super.1998) (quoting *Commonwealth v. Scheinert*, 519 A.2d 422, 425 (Pa.Super.1986)); *accord Selective Serv. Sys. v. Minnesota Public Int. Research Grp.*, 468 U.S. 841, 847 (U.S. 1984).

Appellant maintains that, as applied to him, the statute is a bill of attainder. He reasons the jury was informed it should find him guilty solely because he was homeless and argues the testimony established Appellant

_____

[4] The trial court found there was sufficient evidence that Appellant failed to provide an intended residence because his intended residence, i.e., a county jail, did not fall within the definition of residence. Trial Court Opinion, 1/9/2014, at 5. This Court, however, can "affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm." *Commonwealth v. McLaurin*, 45 A.3d 1131, 1138 n.2 (Pa.Super.2012) (quoting *Commonwealth v. Williams*, 35 A.3d 44, 47 (Pa.Super.2011)).

was homeless because of his designation as a sexually violent predator. Appellant's Brief at 25.

Megan's Law applies to all sexual offenders convicted of delineated crimes and requires that they register their current and intended addresses. 42 Pa.C.S. § 9795.2. It does not apply only to homeless sexual offenders. Further, homeless sexual offenders can comply with the registration requirements by informing the state police of their intended location. **Wilgus**, 40 A.3d at 1208. Moreover, a person can be found guilty of failure to comply with registration of sexual offenders requirements only after a trial. Therefore, the law does determine guilt and inflict punishment without a judicial trial and is not a bill of attainder. **See Selective Serv. Sys.**, 468 U.S. at 847; **Mountain**, 711 A.2d at 478.

In his third claim, Appellant maintains that the court committed reversible error when it informed him it would instruct the jury that homelessness was a defense to the crime charged, but reversed its ruling after closing arguments. **See** Appellant's Brief, p. 35. We agree.

This Court's standard of review in assessing a trial court's jury instructions is as follows:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of

> discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Trippett***, 932 A.2d 188, 200 (Pa.Super.2007) (quoting

***Commonwealth v. Kerrigan***, 920 A.2d 190, 198 (Pa.Super.2007)).

Pennsylvania Rule of Criminal Procedure 647 provides:

> Any party may submit to the trial judge written requests for instructions to the jury. . . . Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.

Pa.R.Crim.P. 647(A). "The purpose of this rule is to require the judge to inform [counsel] in a fair way what the charge is going to be, so that they may intelligently argue the case to jury." ***Commonwealth v. Hendricks***, 546 A.2d 79, 81 (Pa.Super.1988) (quoting ***United States v. Wander***, 601 F.2d 1251, 1262 (3rd Cir.1979)). A court's failure to comply with Rule 647 requires the granting of a new trial if "counsel's closing argument was prejudicially affected thereby." ***Id.*** (quoting ***United States v. McCown***, 711 F.2d 1441, 1452 (9th Cir.1983) (discussing federal version of rule)).

In ***Hendricks***, this Court ordered a new trial where the court did not rule on requested points of charge until after closing argument, and defense counsel's closing arguments focused on a requested point of charge that the trial court subsequently refused to give to the jury. ***Hendricks***, 546 A.2d at 82-83. The Court found that because the trial court failed to inform counsel of its decision to reject the proposed instruction, and because counsel's

summation relied on an instruction the jury never received, a new trial was warranted. *Id.* at 83.

Here, Appellant requested, and the trial court stated it would provide, an instruction that homelessness was a defense to the crime charged. The trial court, however, did not provide the homelessness charge. Instead, it instructed the jury as follows:

> The charge against the [d]efendant is that of failure to follow certain reporting requirements imposed by law. To find the defendant guilty of this offense you must find that the following elements have been established beyond a reasonable doubt:
>
> First that the [d]efendant is required to register all current or intended residences with the Pennsylvania State Police upon his release from a state correctional facility.
>
> Second that the [d]efendant knowingly failed to register all current or intended residences with the Pennsylvania State Police upon release. To act knowingly in this regard means that the defendant was aware of his obligation and voluntarily did not do so.
>
> In my instructions I have given you the legal definition of the crime charged. Motive is not a part of that definition. The Commonwealth [is] not require[d] to prove a motive for the commission of the crime charged.
>
> However, you should consider evidence of motive or lack of motive. Knowledge of human nature tells us that an ordinary person is more likely to commit a crime [if] he or she has a motive than if he or she has none.
>
> You should weigh and consider the evidence attempting to show motive or absence of motive, along with all other evidence in deciding whether the Defendant is guilty or not guilty. It is entirely up to you to determine what weight should be given to the evidence concerning motive.

As used in the proceeding instruction, the following words have the following meanings: residence is a location where an individual resides, or is domiciled, or intends to be domiciled for 30 consecutive days or more during a calendar year.

Voluntary is proceeding from the will, done of or due to one's own accord or free choice; unconstrained by external inference, force, or influence; not compelled, prompted, or suggested by another. Spontaneous: of one's is or its own accord [sic], free.

Criminal liability may not be imposed for the failure to perform acts which a person has no power to perform. Rather, [the] essence of criminal law is the imposition of criminal liability for voluntary, [culpable] acts which are offensive to public order and decency.

N.T. 1/12/2009, pp. 172-174.

The trial court found the denial of the homelessness charge was not error because homelessness is not a defense. 1925(a) Opinion, p. 8. The trial court further found that, unlike **Hendricks**, Appellant was not prejudiced by the absence of the requested instruction because it gave the following instruction instead: "Criminal liability may not be imposed for the failure to perform acts which a person has no power to perform. Rather the essence of criminal law is the imposition of criminal liability for voluntary, [culpable] acts which are offensive to public order and decency." **Id.** at 9.

The trial court abused its discretion by refusing to charge the jury as agreed. Prior to closing arguments, the court informed the parties that it would instruct the jury that homelessness was an absolute defense to the crimes charged. Defense counsel tailored his closing argument in reliance upon the court's assurances. **See** N.T. 1/12/2009, pp. 153-158. Then,

- 15 -

without warning, the trial court failed to give the homelessness charge. **See** 1925(a) Opinion, p. 7; N.T. 1/12/2009, pp. 172-174. Given that defense counsel tailored Appellant's closing upon the expected homelessness charge, the trial court's failure to provide the charge was an error that prejudiced Appellant.[5] This error warrants a new trial. **See Hendricks**, 546 A.2d at 82-83. Accordingly, we reverse the judgment of sentence and remand the matter for a new trial.[6]

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/4/2015

---

[5] We further note that the trial court's "failure to perform" charge, discussed **supra**, was not nearly as explicit as the previously-agreed homelessness charge and did not remedy the prejudice suffered by Appellant when the court failed to charge the jury as it had stated it would prior to Appellant's closing argument.

[6] We will not discuss Appellant's fourth claim of error. Appellant's third claim is dispositive, and the Supreme Court has not requested a discussion of Appellant's fourth claim.