J-S17036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
WILLIAM M. LOVE, :
:
Appellant : No. 2559 EDA 2015

Appeal from the Judgment of Sentence May 29, 2015
in the Court of Common Pleas of Monroe County,
Criminal Division, No(s): CP-45-CR-0002788-2013

BEFORE: OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED APRIL 27, 2017**

William M. Love ("Love") appeals from the judgment of sentence entered following his conviction of sexual assault, aggravated indecent assault, indecent assault, corruption of minors, furnishing alcohol to minors and unlawful contact with a minor.[1] We affirm.

In its Opinion, the trial court set forth the procedural history underlying the instant appeal, which we adopt as though fully restated herein. *See* Trial Court Opinion, 10/29/15, at 1-3.

On October 26, 2013, Love's girlfriend, 19-year-old Kayshawn Clark ("Clark"), contacted the victim, 17-year-old B.C. ("the victim" or "B.C."), seeking assistance with planning Clark's baby shower. The next day, Clark texted B.C. to remind her of their plans. Thereafter, Clark and Love picked up and drove B.C. and her baby to Love's house. Upon arriving at Love's

---

[1] 18 Pa.C.S.A. §§ 3124.1, 3125, 3126, 6301, 6310.1, 6318.

house, Love offered a drink to B.C., which he identified as iced tea. After drinking the iced tea, B.C. began losing consciousness. As she went in and out of consciousness, B.C. became aware that she was being sexually assaulted and raped by Love.

Following a jury trial, Love was convicted of the above-described charges.[2] Love filed a post-sentence Motion, which, after a hearing, the trial court denied. In its Opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court stated the following: "Despite raising both weight and sufficiency claims, [Love] did not request transcription of the trial. In his appeal documents, he asked only for the transcript of the July 21, 2015 hearing on his post-sentence [M]otions…." Trial Court Opinion, 10/29/15, at 3. Thereafter, Love filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Love raises ten claims of error for our review:

I. Did the trial court abuse its discretion by not setting aside the verdict for the charge of unlawful contact with a minor where there was no contact as defined by statute?

II. Did the trial court abuse its discretion by not setting aside the verdict where the criminal statute of unlawful contact with a minor is unconstitutionally broad?

III. Did the trial court abuse its discretion by not setting aside the verdict where there was insufficient evidence to convict [Love] of unlawful contact with a minor?

---

[2] Separately, Clark pled guilty to criminal use of a communication facility.

IV. Did the trial court abuse its discretion by not setting aside the verdict where there was insufficient evidence to convict [Love] of sexual assault?

V. Did the trial court abuse its discretion by not setting aside the verdict where there was insufficient evidence to convict [Love] of aggravated indecent assault?

VI. Did the trial court abuse its discretion by not setting aside the verdict where there was insufficient evidence to convict [Love] of indecent assault?

VII. Did the trial court abuse its discretion by not setting aside the verdict where it was against the weight of the evidence to convict [Love] of unlawful contact with a minor?

VIII. Did the trial court abuse its discretion by not setting aside the [verdict] where it was against the weight of the evidence to convict [Love] of sexual assault?

IX. Did the trial court abuse its discretion by not setting aside the verdict where it was against the weight of the evidence to convict [Love] of aggravated indecent assault?

X. Did the trial court abuse its discretion by not setting aside the verdict where it was against the weight of the evidence to convict [Love] of indecent assault?

Brief for Appellant at 4-5 (some capitalization omitted, issues renumbered for ease of disposition).

In his first and second claims, Love challenges the sufficiency of the evidence underlying his conviction of unlawful contact with a minor, and the constitutionality of 18 Pa.C.S.A. § 6318. *Id.* at 10. Love first asserts that

there is no evidence [that Love] contact[ed] the [victim] over the internet. There is no evidence that [Love] contacted the victim through any other means. The only contact [Love] had was when the victim was at his house[;] however, there still is no evidence that during this direct contact, that [Love] made any comments, remarks, suggestions, or questions to the victim

- 3 -

of a sexual nature. There is no evidence that [Love] had contact
for the purpose of engaging in the prohibited activity.

Brief for Appellant at 11-12 (emphasis omitted). Simply put, Love claims

that he did not have "contact" with B.C., as defined by 18 Pa.C.S.A. § 6318.

*Id.*

In his second claim, Love challenges the definition of "contact," set

forth at 18 Pa.C.S.A. § 6318, as overbroad and, therefore, unconstitutional.

*Id.* at 14. Love posits that section 6318 bars contact for the purpose of

engaging *in the prohibited activity*. *Id.* at 15. Love contends that "[t]he

only contact [Love] had was when the victim was at his house[;] however,

there still is no evidence that during this direct contact, [Love] made any

comments, remarks suggestions, or questions to the victim of a sexual

nature." *Id.* Love again argues that there is no evidence that he "had

contact for the purpose of engaging in the prohibited activity." *Id.* at 16

(emphasis omitted). Love cites *Commonwealth v. Morgan*, 913 A.2d 906,

911 (Pa. Super. 2006), in support. Brief for Appellant at 16-17.

In addressing these claims, we are cognizant of our scope and

standard of review:

> There is sufficient evidence to sustain a conviction when the
> evidence admitted at trial, and all reasonable inferences drawn
> therefrom, viewed in the light most favorable to the
> Commonwealth as verdict-winner, are sufficient to enable the
> fact-finder to conclude that the Commonwealth established all of
> the elements of the offense beyond a reasonable doubt. The
> Commonwealth may sustain its burden by means of wholly
> circumstantial evidence. Further, we note that the entire trial
> record is evaluated and all evidence received against the

defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Martin*, 101 A.3d 706, 718 (Pa. 2014) (internal citation and quotation marks omitted).

In its Opinion, the trial court addressed Love's first two claims, and concluded that they lack merit. *See* Trial Court Opinion, 10/29/15, at 3-7. We agree with the legal analysis and ultimate conclusion reached by the trial court, and affirm on this basis as to Love's first and second claims. *See id.*

In his remaining claims, Love challenges the sufficiency of the evidence underlying each of his convictions, and claims that each verdict is against the weight of the evidence. *See* Brief for Appellant at 18-33.

Regarding Love's challenges to each verdict as against the weight of the evidence, we are cognizant that

> [t]he weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock one's conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Rosser***, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citations and internal quotation marks omitted).

Our review discloses that the record does not include the notes of testimony from the entire trial. Rather, this Court received the transcripts of the victim's trial testimony, the sentencing hearing, and the hearing on Love's post-sentence Motion. No other trial testimony was transcribed. ***See*** Trial Court Opinion, 10/29/15, at 3 (stating that Love did not request transcription of the trial, and setting forth the notes of testimony available in the record).

"This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record." ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (citations omitted). "As an appellate court, we are 'limited to considering only those facts that have been duly certified in the record on appeal.'" ***Commonwealth v. Spotz***, 18 A.3d 244, 323 (Pa. 2011) (quoting ***Commonwealth v. Williams***, 715 A.2d 1101, 1103 (Pa. 1998)). "In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted." ***Preston***, 904 A.2d at 7. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." ***Id.***; ***see also*** Pa.R.A.P. 1911(d) (stating that "[i]f the appellant fails to take the

action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal.").

As the trial court observed in its Opinion, "[d]espite the fact that [Love's] weight and sufficiency claims constituted fact-based challenges, [Love] did not ask that the trial be transcribed." Trial Court Opinion, 10/29/15, at 7. Consequently, the trial court deemed these claims waived. **See id.** at 7-9 (deeming Love's claims waived based upon Love's failure to have transcribed the notes of testimony of the trial). Upon review, we agree with the trial court, and conclude that Love's failure to have transcribed the necessary notes of testimony impedes our review of his remaining weight and sufficiency claims. Consequently, we deem those claims waived. **See** Pa.R.A.P. 1911(d).[3]

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2017

---

[3] Our holding does not preclude Love from seeking post-conviction collateral relief.

- 7 -

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : 

        v. : NO. 2788 CR 2013

William M. Love, : APPEAL DOCKET NO.
        : 2559 EDA 2015

    Defendant : 

## OPINION PURSUANT TO Pa.R.A.P. 1925(a)

Following the denial of his post-sentence motions, Defendant William Love ("Defendant") filed an appeal from the judgment of sentence entered on May 29, 2015. Thereafter, we directed Defendant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Defendant complied. We now file this opinion in accordance with Pa.R.A.P. 1925(a).

### Background

On October 28, 2013, Defendant was arrested and charged with Rape by Forcible Compulsion, Rape of a Substantially Impaired Person, Rape of an Unconscious Person, Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Sexual Assault, Aggravated Indecent Assault of an Impaired Person, Aggravated Indecent Assault without Consent, Indecent Assault without Consent, Indecent Assault of a Substantially Impaired Person, Unlawful Contact with a Minor, Corruption of a Minor, and Selling or Furnishing liquor to a Minor. The victim was the seventeen year-old friend of Defendant's nineteen year-old girlfriend, Kayshawn Clark.

On March 10, 2015, a jury found Defendant guilty of Sexual Assault, Indecent Assault, Aggravated Indecent Assault, Unlawful Contact with a Minor, Furnishing

1



Alcohol to Minors, and Corruption of a Minor. We accepted the verdict, ordered an assessment by the State Sexual Offender's Board ("SOAB"), directed that the testimony of the victim be transcribed as part of the SOAB assessment process, and scheduled sentencing for May 29, 2015. (Order, dated March 10, 2015).

On May 29, 2015, the sentencing hearing was held, as scheduled. Defendant was classified as a Tier 3 lifetime registrant under Megan's Law IV, 42 Pa. C.S.A. Section 9799.10 *et. seq.*, and sentenced to 108 to 260 months in a State Correctional Institution.

On June 8, 2015, Defendant filed post-sentence motions seeking reconsideration of his sentence, challenging both the sufficiency and weight of the evidence as to all offenses, and challenging the Unlawful Contact conviction on both constitutional and statutory interpretation grounds. Simultaneously, Defendant filed motions for transcription of his sentencing hearing as well as the hearing at which his girlfriend, who previously pled guilty to Criminal Use of a Communication Facility for her role in the crimes committed against the victim and who had testified against Defendant at trial, was sentenced. Transcripts of both sentencing hearings were prepared and filed.[1]

On July 21, 2014, we convened a hearing on Defendant's post-sentence motions. At the conclusion of the hearing, we issued an order denying the motions. We briefly summarized our reasons for the denial on the record. (N.T., 7/21/2015, pp. 7-10). We incorporate our on-record statements into this opinion by reference.

---

[1] The case in which Ms. Clark pled guilty is docketed to No. 599 Criminal 2014. The transcript of her sentencing hearing was filed of record in that proceeding. To ensure that the Superior Court has a complete record on which to evaluate Defendant's appeal in this case, we have issued an order directing our Clerk of Courts to include a copy of Ms. Clark's sentencing transcript in the certified record.

2

Subsequently, Defendant filed this appeal. In his appeal statement, Defendant raises eight assignments of error which, for the most part, mirror his post-sentence motions. The first two assignments repeat his constitutional and statutory construction-based challenges to the Unlawful Contact conviction. The remaining eight assignments of error reiterate his sufficiency and weight claims.

Despite raising both weight and sufficiency claims, Defendant did not request transcription of the trial. In his appeal documents, he asked only for the transcript of the July 21, 2015 hearing on his post-sentence motions. As a result, references throughout this opinion to the facts of this case are based on the hearing transcripts that have been filed, the transcript of the victim's testimony that was prepared for the SOAB evaluation, the pre-sentence investigation report, and the recollection and perceptions of the undersigned as the judge who presided over the trial as well as pre and post-trial hearings.

## Discussion

### I.    Unlawful Contact

Defendant's first two assignments of error challenge his conviction for Unlawful Contact with a Minor. Specifically, Defendant contends that the Unlawful Contact statute is unconstitutionally overbroad and, in any event, that he did not have contact with the victim within the meaning of the statute as written. His arguments lack merit.

a.    The Unlawful Contact Statute is Not Overbroad

The constitutional analysis is well settled. Properly enacted legislation is presumed to be valid and, "unless it clearly, palpably and plainly violates the Constitution, it will not be declared unconstitutional." *Commonwealth v. Davidson*, 938

3

A.2d 198, 207 (Pa. 2007) (citations omitted). A statute is unconstitutionally overbroad only if it punishes constitutionally protect activity as well as illegal activity. *Id.* at 208 (citation omitted). The court must determine whether the enactment of a statute "reaches a substantial amount of constitutionally protected conduct." *Id.* (quoting *Commonwealth v. Ickes*, 873 A.2d 698, 702 (Pa. 2005)). *See also Commonwealth v. Morgan*, 913 A.2d 906, 912 (Pa. Super. 2006), *appeal denied*, 927 A.2d 623 (Pa. 2007).

In *Morgan*, the Superior Court rejected the argument being made by Defendant in this case. Specifically, applying the constitutional principles summarized above, the Superior Court found that the Unlawful Contact statute was not overbroad because the "statute by its reach does not punish a substantial amount of constitutionally protected conduct" and "is narrowly tailored to advance a compelling state interest, that being the protection of minors who lack capacity to consent to sexual intercourse." *Id.* Under the holding and rationale of *Morgan*, Defendant's constitutional challenge does not hold water.

b.      Defendant had "Contact" with the Minor Victim

Defendant's contention that he did not have contact with the victim within the meaning of the statute requires that we interpret the Unlawful Contact statute. Again, the applicable rules are well settled.

In determining the meaning of a statute, courts are obliged to consider and give effect to the intent of the legislature. "A statute's plain language generally provides the best indication of legislative intent." *Commonwealth v. McCoy,* 962 A.2d 1160, 1166

4

(Pa. 2009). In more expansive terms, under firmly established rules of statutory construction, it is well settled that

> the object of all interpretation of statutes is to ascertain and effectuate the intention of the General Assembly, and that the plain language of the statute is generally the better indicator of such intent. When ascertaining the intent of the General Assembly, there is a presumption that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable when enacting legislation. Furthermore, the words of a statute shall be construed according to the rules of grammar and according to their common and approved usage. We will only look beyond the plain meaning of the statute where the words of the statute are unclear or ambiguous.

*Commonwealth v. Diodoro*, 970 A.2d 1100, 1106 (Pa. 2009), *cert. den.*, 558 U.S. 875 (2009) (internal citations and quotation marks omitted).

Penal statutes must be strictly construed. *Commonwealth v. Dixon*, 53 A.3d 839, 846 (Pa. Super. 2012). However, "the rule of lenity itself has limits." *Commonwealth v. Wilgus*, 40 A.3d 1201, 1210 (Pa. 2012).

> The need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded, nor does it override the more general principle that the words of a statute must be construed according to their common and approved usage. It does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt. Significantly, a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope.

*Id.* (quoting *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001)).

5

The Unlawful Contact statute states, in relevant part:

> (a) Offense defined.--A person commits an offense if he is intentionally in contact with a minor . . . . for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).
>
> \* \* \*
>
> (c) Definitions.
>
> \* \* \*
>
> "Contacts." Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa. C.S.A. § 6318. Under the plain language of this statute, there is no question that Defendant had contact with the victim.

At the hearing on Defendant's post-sentence motions, counsel for Defendant contended that contact within the meaning of the Unlawful Contact statute has been interpreted by the courts to mean communication, typically through electronic means, and that such communication must be of a sexual nature. (N.T., 6/21/2015, pp. 3-5). However, defense counsel was unable to cite to any case that supported this argument. Moreover, the argument runs contrary to the express language of the statute.

The Unlawful Contact statute is framed in the disjunctive. Accordingly, it is unlawful to *either* contact *or* communicate with a minor for a prohibited purpose. Since

6

the evidence presented by the Commonwealth established that Defendant had both direct and indirect contact *and* communication with the minor victim for the purpose of committing a Chapter 31 offense, it is clear that the Unlawful Contact statute was violated.

Specifically, the evidence presented at trial demonstrated that Defendant had Ms. Clark lure the victim to the house. Defendant and Ms. Clark then picked the victim up and brought her to their home. Defendant communicated and interacted directly and indirectly with the victim both during the ride and in the home. Defendant gave the victim a spiked drink which opened the door to the assault that he perpetrated while the victim was in and out of consciousness. These contacts and communications were part of the set-up and the lead-up to the sexual assault. Of course, during the assault Defendant had physical contact with the victim and also spoke to her.

Simply put, Defendant communicated and had direct and indirect contact, both physically and verbally, with the minor victim within the ordinary and statutory meanings of those terms. His statutory interpretation argument to the contrary is completely devoid of merit.

## II. Defendant Waived the Remainder of his Assignments of Error

As noted, Defendant's final eight assignments of error are comprised of challenges to the weight and sufficiency of the evidence. Despite the fact that his weight and sufficiency claims constitute fact-based challenges, Defendant did not ask that the trial be transcribed. As a result, we believe that Defendant has waived assignments of error three through eight.

7

It is well settled that it is the appellant's duty to supply appellate courts with a record which is sufficient to permit meaningful appellate review. This includes transcripts necessary to permit resolution of the issues raised on appeal. *See Commonwealth v. Lesko,* 15 A.3d 345 (Pa. 2011); *Commonwealth v. Williams,* 715 A.2d 1101 (Pa. 1998); *Commonwealth v. Preston,* 904 A.2d 1 (Pa. Super. 2006); *Commonwealth v. Steward,* 775 A.2d 819 (Pa. Super. 2001); *Com. v. Geatti,* 35 A.3d 798 (Pa. Cmwlth. 2011), appeal denied, 40 A.3d 1237 (Pa. 2012); Pa. R.A.P. 1911.

In this regard, Pa. R.A.P. 1911, entitled Request for Transcript, provides in pertinent part that:

> (a) General rule. The appellant shall request any transcript required under this chapter in the manner and make any necessary payment or deposit therefor in the amount and within the time prescribed by Rules 5000.1 et seq. of the Pennsylvania Rules of Judicial Administration (court reporters).
>
> * * *
>
> (d) Effect of failure to comply. If the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate Court may take such action as it deems appropriate, which may include dismissal of the appeal.

The plain terms of the Rules of Appellate Procedure, including Rule 1911, contemplate that the parties, who are in the best position to know what they actually need for appeal, are responsible to take affirmative actions to secure transcripts and other parts of the record. *Commonwealth v. Lesko, supra.* It is not the responsibility of trial or appellate courts to order the transcription of necessary proceedings. To the contrary, Rule 1911 makes it abundantly plain that it is the responsibility of the

8

appellant (or cross-appellant) to order all transcripts necessary to the disposition of his appeal. *Commonwealth v. Williams, supra; Commonwealth v. Preston, supra; Commonwealth v. Steward, supra.*

With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P.1911(a). When the appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts. *Commonwealth v. Preston,* 904 A.2d at 7 (citations omitted). *See also Commonwealth v. Geatti, supra* (Defendant's failure to request a transcript from the Court of Common Pleas as part of his appeal meant the appellate court could not conduct an appropriate review of the issues raised by defendant and resulted in waiver of those issues).

In this case, Defendant claims there is insufficient evidence to convict him of Unlawful Contact with a Minor, Sexual Assault, Indecent Assault, and Aggravated Indecent Assault. He further claims that his convictions for those crimes are against the weight of the evidence. Because the weight and sufficiency challenges are fact-based claims that require our appellate courts to examine all of the evidence, including the testimony of all witnesses, the trial transcript is necessary to resolve the claims. By failing to request that transcript, Defendant waived his challenges to the weight and sufficiency of the evidence.

9

## III. In the Alternative, Defendant's Challenges to the Weight and Sufficiency of the Evidence are Devoid of Merit.

As noted, Defendant challenges both the sufficiency and the wright of the evidence to sustain the convictions. A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). The court must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 555 A.2d 1264, 1267 (Pa. 1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1236 n. 2 (Pa. 2007). The uncorroborated testimony of the victim, if believed, is enough to support the conviction of a defendant of sexual offenses. *Commonwealth v. Poindexter*, 646 A.2d 1211, 1214 (Pa. Super. 1994).

10

The Crimes Code defines Aggravated Indecent Assault as follows:

> [A] person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
> (1) the person does so without the complainant's consent; [or]
>
> * * *
>
> (5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance.

18 Pa.C.S.A. § 3125.

A person commits Indecent Assault if

> the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
> (1) the person does so without the complainant's consent;
> (2) the person does so by forcible compulsion;
>
> * * *
>
> (4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring;
> (5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance;

18 Pa.C.S.A. § 3126. Indecent contact is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

11

Sexual Assault, in turn, is defined as follows:

> Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent."

18 Pa.C.S.A. § 3124.1. The terms "sexual intercourse" and "deviate sexual intercourse" have specific meanings. "Sexual intercourse, [i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; [and] emission is not required." 18 Pa.C.S.A. § 3101. Deviate sexual intercourse is:

> "Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures."

18 Pa.C.S.A. § 3101.

Finally, Unlawful Contact is defined as quoted above. In summary, A person commits the offense if he is intentionally in contact with a minor for the purpose of engaging in an enumerated prohibited activity, including all Chapter 321 sex offense crimes. 18 Pa.C.S.A. § 6318.

The evidence, viewed in the light of the applicable standards, may be summarized as follows:

The victim and Ms. Clark were teenage friends. Defendant was Ms. Clark's boyfriend and the father of her baby. Defendant was a man in his thirties. On October 27, 2013, Ms. Clark invited the victim over for dinner, ostensibly so that the victim

12

could help plan Ms. Clark's baby shower. The baby shower was a pretext; unbeknownst to the victim, Defendant wanted the victim to come over so that there could be a sexual tryst. The victim accepted Ms. Clark's invitation and was picked up at her house by Defendant and Ms. Clark. The victim brought her infant daughter along with her.

At his home, Defendant spoke with the victim and asked her about her age. The victim said that she was seventeen, and Defendant said that Ms. Clark told him that she was eighteen. The victim offered to show Defendant her identification but Defendant declined. Defendant offered the victim a drink, which she accepted. This drink contained alcohol and an unknown drug which caused the victim to feel dizzy, sit down, and ultimately lose control of her faculties.

After the victim drank the concoction that Defendant prepared for her, Defendant pressed himself against her. The victim felt Defendant's erection through their clothes. The victim began to fade in and out of consciousness. As this was occurring, the victim felt Defendant remove her breast from her shirt and lick her nipple, put his fingers into her vagina, pull her pants down, and put his penis into her vagina. After she left the house, the victim was taken by ambulance to the hospital where she spoke with police and samples were taken for DNA analysis.

Ms. Clark testified at trial. She confirmed and supported the testimony of the victim and the sexual assaults perpetrated by Defendant. In addition, the Commonwealth presented DNA evidence.

It is clear from even this quick summary overview of the facts that, when viewed in light of the applicable standards, the evidence was more than sufficient to sustain

13

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations, footnote, and quotation marks omitted).

Additionally, trial courts possess only narrow authority to reverse a jury verdict on a weight of the evidence challenge.

> The general rule in this Commonwealth is that a weight of the evidence claim is primarily addressed to the discretion of the judge who actually presided at trial. There is, of course, some tension between the power of trial courts to overturn jury verdicts premised upon weight claims, and the bedrock principle that questions of credibility are exclusively for the fact-finder. Accordingly, the authority for the trial judge to upset a verdict premised upon a weight claim is narrowly circumscribed.

*Armbruster v. Horowitz*, 813 A.2d 698, 702-703 (Pa. 2002) (internal citations and quotation marks omitted).

In this case, the jury heard the testimony of the victim, Ms. Clark, and the Commonwealth's DNA expert. All witnesses were cross-examined. In addition, the jury heard the testimony of a defense DNA expert. The jury obviously found the victim and the other Commonwealth witnesses credible. It was entirely within the jury's province to do so. Further, the verdict was not so contrary to the evidence that it shocked our sense of justice. Defendant's conviction of these offenses is not against the weight of the evidence and this contention is meritless.

In short, by failing to request the necessary transcription of his trial, Defendant waived appellate review of his sufficiency and weight claims. However, even if these challenges are addressed on their merits, they are baseless. The evidence presented by the Commonwealth was more than enough to sustain the verdict, and the convictions do not shock one's sense of justice.

15

For these reasons, the judgment of sentence should be affirmed.


Date: October 29, 2015

_____
JONATHAN MARK,                    J.


Cc:     Superior Court of Pennsylvania
        Jonathan Mark, J.
        District Attorney
        Public Defender (FC)

2015 OCT 29 PM 2 38
MONROE COUNTY, PA
CLERK OF COURTS

16